May it please the Court. Philip Smith on behalf of petitioner Sylvia Felix. Your Honor, petitioner Ms. Felix is petitioning for review of a 1998 removal order that was entered after a hearing in which she was pro se without an attorney, and at the hearing she was told that she was not eligible for any relief and she was not given an opportunity. Well, that's not quite true. She wasn't told she was ineligible for relief. She was told that there were attorneys available and she might want to consult one, and she was told that maybe there's a basis to set aside or have her criminal conviction altered in such a way as that she wouldn't be forced to leave the country, and she seemed hell-bent on getting to Tijuana that day for her personal reasons, which I understood, but I have some difficulty with the characterization of that as being that she was tossed out because she was told there was no relief possible. The I.J. did kind of bend over backwards to say, you know, you might want to talk to an attorney about all this, and she was very clear in saying I want to get to Tijuana today. Well, I think it's correct that the I.J. did go through that there might be an – the I.J. actually explained that the only opportunity that she had was to have her criminal conviction somehow set aside and that given that criminal conviction, there would be no form of waiver or relief that she could apply for. So that's correct. And she wasn't interested in pursuing the options that you made available to her? She – well, she did – she did not – she was detained at the time, and she did not seek out an attorney. That's right. She accepted the judge's order on that day, and she was deported on that day. And after that, Your Honor, this case went through different procedural twists and turns. But at its core, it's controlled by INS v. St. Cyr and the general rule that Supreme Court decisions apply immediately to all cases pending direct review. And this – Well, was her case pending direct review? Because of the Real ID Act, which converted the habeas petition that had been filed into a timely filed petition for review. I'm earlier in time. It seems to me that once she accepted the order of removal and decamped to Tijuana, albeit not for very long, there was no further review. There was no effort to appeal that removal order to the BIA. There was no exhaustion of administrative remedies at that time. And there was nothing pending at the time the Supreme Court comes out with St. Cyr. At the time, there was nothing pending, yes. However – So the rule you've referred to, I don't understand how it applies here, because she hadn't pursued possible relief. Well, under this Court's precedent in Leon Paz, which was – it was a criminal reentry case, Leon Paz decided in the same situation where a person had been order-deported, they had not – had been determined they were not eligible for 212C relief, they were deported. The court in Leon Paz said that the person's right to – to – for judicial review, their waiver was not knowing and considered, their right to judicial review was violated because they had been told they were not eligible for 212C waiver when, in fact, under St. Cyr, they would have been eligible for the 212C waiver. And so the – Wait, wait, wait, wait, wait. Isn't – the distinction here, though, is that that advice was correct at the time it was given, was it not, in 1998? Which was the same circumstance in Leon Paz, Your Honor. Well, I – I – At the – Leon Paz was – removal – initial order was in 1997. In 1997, and St. Cyr doesn't come down until the 2000s. That's correct, Your Honor. Okay. So the problem I guess I'm having from – and maybe it's a policy concern – she immediately illegally reentered after she acceded to deportation to Tijuana, correct? Correct. So the concern is that if we give relief to her and every similarly situated alien who did the same thing, why should the law encourage aliens to depart, wait to see if the law changes favorably, even though they didn't avail themselves of any of the remedies of appeal that would – that were available to them, which they waived at the time. Then they come back illegally, and now they want to raise favorable changes in the law that have occurred since. Well, a couple of points. One, the waiver, as determined in Leon Paz, violated the person's due process rights. So we would say the waiver was not knowingly done. But the due process violation has to be at heart because it was not knowingly and voluntarily entered. And the problem I'm having with your argument is that at the time of the original proceeding, the state of the law was that there was no T-12C relief that was available. And so the advice that was given was legally correct. And to the extent that the alien relied on that legally correct advice, then there was a knowing and voluntary waiver of objections to the departure, and she left. But then she commits another illegal act by reentering and now wants to take advantage of the change in the law. And I'm hard-pressed to see why I should declare that set of facts to be a due process violation. Well, as regards to the illegal returning, I mean, there is an option for the agency, and that is the reinstatement provision. And that really is the Alvarenga-Villalobos case. And so in a circumstance where the previous removal order is reinstated under 1231A5, and that reinstatement provision says the previous order is not open to reopening or review. And so that eliminates, frankly, the majority of situations where after someone is ordered removed and returns, the government reinstates, and then they're not, then they are attempting, then the individual is somehow attempting to do a collateral attack, which Alvarenga says they're not eligible to do. Okay. But in this case the government. There was no reinstatement. Because the government prosecuted, right, criminally? There was a prosecution initiated. For illegal reentry. And it was dismissed. Okay. Again, because of Leon Paz. Yeah. So what would prevent the government today from simply reinstating the order as you suggest? Well, I mean, we're not suggesting they reinstate it. I know you're not asking for that relief. I understand that. Well, that actually, legally that's a difficult question. I think our argument would be that the initial removal order is on direct review now in this petition for review. Well, how can it be, though? Because it didn't, no exhaustion occurred because it wasn't reviewed by the BIA. There was no effort to have it reviewed by the agency. There's two exceptions to the exhaustion that apply in this case. One, as Leon Paz explained, she didn't knowingly waive her right to a policy appeal. That's in a criminal context. It's not saying anything at all about the ability to review a deportation order. Well, it was a criminal case. But Leon Paz was addressing the due process violation that took place in the removal proceeding. And as a result says that a criminal prosecution is not appropriate. But I don't think it says anything directly with regard to what further review of the deportation order is possible. Well, it doesn't apply. It's true that it doesn't, it wasn't a criminal context. But the court has used. But the process that was due was the right to appeal, which she waived at the time that she acceded to the removal in 1997 or 98. And if the waiver was knowingly and considered, then it could be considered a valid waiver. Under Leon Paz, it wasn't. I'm still having a hard time and maybe I'm confusing. I think Judge Clifton is right. Leon Paz really was more confined to a criminal case and notions of voluntariness and fairness in a criminal prosecution. Whereas here we're talking about administrative remedies that were waived. She's in essence seeking equitable relief with unclean hands, in my view. She's acceding to the voluntary deportation, if that's the correct term. She's not objecting to deportation. And then she's immediately illegally reentering and now throwing herself at the feet of this court saying, I'm entitled to a whole new level of review that I waived once before. And then I waited to see if the law would change. And now I want it. And I'm having a real difficult time seeing that as an in-process violation. Well, Leon Paz was attempting to collaterally attack in his criminal proceeding. Okay. But you started this as a habeas proceeding. It started as a habeas proceeding. Correct. A habeas proceeding is essentially equitable in nature. So why shouldn't I apply normal principles of equity and conclude that it is not? I don't see a due process violation, and it is not equitable to reward your client's conduct, given the fact that she waived all of the procedures that were available to her at the time and chose to leave. Well, the, apart from the Leon Paz argument, the second exception to the exhaustion requirement is where the agency is unable to provide effective relief. So, for example, if the agency has conclusively determined the issue, and in this particular case, the Board of Immigration Appeals, in matter of Soriano, had determined, in an en banc case, that 212C relief was not available to a person in this situation. And the Attorney General had taken that case on certification and said, 212C relief is no longer available, categorically. At that point, the BIA, the Board, cannot reverse the Attorney General. The Board is bound to follow the Attorney General. So there really was no effective relief available to her at the BIA. At the same time, Your Honor, at that time, there wasn't the ability to do a petition for review to this Court, because she had the criminal conviction. So her only opportunity would have been to go to habeas proceedings at that time. Now, she did not. But she chose not. But that's not an administrative remedy available to her as of right. But it's a waiver of a remedy that was then available to her. And she wants us, I mean, you said a few minutes ago that through this proceeding, the original removal order is now on direct review. She's essentially asking us for another round of review, a second bite at the apple. Well, it can't be a second bite, because she didn't take the first one. But the apple was offered to her. And now she wants the apple again. Well, what she's really asking is, is this a petition for review, and the Supreme Court's, and it's on direct review. And the Supreme Court's decision is. Well, it's on direct review because you filed it as a habeas case, and the REAL-ID Act directed that all pending habeas proceedings be transferred to the courts of appeal. Correct. And under Alvarez-Barajas, the Court's decision in Alvarez-Barajas was a case that was denied habeas, and then it was referred to the Court, and it's taken as a petition for review. The Court said that we're not reviewing the district court's decision. We are now reviewing the decision of the agency. And so essentially, that is what Ms. Felix is doing. But we kind of recycled the same question, because the decision of the agency is what? I'm sorry? What's the decision of the agency we're reviewing? It is the immigration judge's decision in 1998. And there's a big gap there. There is a big gap there. And a gap not just in time, but a gap because what we ordinarily review is the decision of the BIA, and there is no decision of the BIA because there was no exhaustion of that available route. And there was an – and because the BIA could not make a decision, could not give her effective relief, she – there is an exception to the exhaustion requirement. And under Leon Paz, it wasn't a knowing and voluntary waiver of a right to appeal. And with regards to – and with regards to the other petition for review, then she has – at the same time, she filed a motion to reopen the original removal order. And that was denied by the board because she had left the country. And there's a regulation that's 8 CFR 103.23B that said – that was interpreted to say that the court doesn't have – the immigration court did not have jurisdiction to decide the motion to reopen. Subsequently, this court in Lynn determined that that regulation does not bar a motion to reopen in a case like this where the person was ordered deported and left the country. So under Lynn, the reasoning given for the BIA to deny the motion by the IJ and then So the reasons given by the BIA to deny the motion to reopen have been overturned by Lynn. I think respondents have withdrawn those arguments. So our position in the motion to reopen is that it should be remanded now for a determination on the merits. St. Cyr applies to her case. And under St. Cyr, she's promised to be eligible for the 212C waiver. The final position for review is of the – been there with a subsequent removal order, a second removal hearing. At that point, it is a collateral attack, which is what Ms. Phoenix is attempting to do. She's attempting to say she's still lawful permanent resident because of the defect in the initial order. And there, the board allows that collateral attack if she can show a gross miscarriage of justice. The board says she had not shown a gross miscarriage of justice because at the time of the initial hearing, the immigration judge was correct as a matter of law. I mean, that is what the board says. Ms. Phoenix's position is that it is a gross miscarriage of justice for a lawful permanent resident who was eligible for relief at the time. It was her one opportunity to apply for a waiver. She was denied that waiver. Well, it was her one opportunity to apply for a waiver. It was not her one opportunity to stay in the country and resist deportation. And in the end, that's what I keep coming back to in my own mind, because the I.J. talked to her specifically about consulting an attorney, about the possibility of having the criminal conviction changed, about the possibility she could claim citizenship through her father. And she was interested in none of those. She wanted to get to Tijuana that day. And so to tell me that she relied upon the I.J. saying that there was no 212 waiver available flies in the face of the facts. If he'd said anything about that possibility, if he'd been a sufficient soothsayer to figure out that sincere was going to come out and that possibility was there, there's not a glimmer of indication in there that she was any more interested in that than any of the other routes to relief, because she was, for her reasons, determined to get to Tijuana that day to take care of her kids. So speaking realistically, I mean, is what you're offering up more than hypothetical? Do you have any reason, anything you can point to to suggest that if the I.J. had said something differently with regard to waiver, her conduct or her decision would have been any different? Well, if the I.J. would have suggested that she had a waiver available that she could apply for, then, yes, she would have wanted to apply for that. Why should I believe that if she wasn't interested in pursuing the possibility that she was a citizen or wasn't interested in pursuing the possibility that conviction could be altered so she wouldn't be subject to removal in the first place? Well, she had been detained for two weeks. Her family members. I mean, do you think that if the I.J. had said maybe someday there'll be a decision that you get waiver, is that going to change the decision with regard to detention? I mean, the reason you want to go to Tijuana is she didn't want to be detained.  There's just no sign in that transcript that anything he said differently about waiver would have altered her decision, as far as I can tell. And can you point me to anything that's different? Well, I can't point you to anything that's different, Your Honor. Do you want to say something? If I may, please. Thank you. Okay. Good morning. May it please the Court. Kelly Walls for the Respondent, the Attorney General. In 1998, Ms. Felix conceded she was removable from the United States based on her aggravated felony controlled substances conviction. She waived appeal, returned to Mexico, and then illegally reentered the United States, beginning the litigation that is before this Court today. Although a procedurally complicated case, all three of Ms. Felix's petitions for review turn on the validity of the 1998 removal order. Ms. Felix does not contest that she was removable based on an aggravated felony controlled substances conviction and instead challenges the validity of the 1998 removal order by claiming that her due process rights were violated first when the immigration judge allegedly failed to inform her of 212C eligibility, and then by the Board finding that her 1998 removal order did not constitute a gross miscarriage of justice. Ms. Felix's due process claims fail for three reasons. First, Ms. Felix has no constitutionally protected interest in applying for or receiving discretionary 212C relief. Second, the immigration judge was not obligated to inform Ms. Felix of relief for which she was not apparently eligible in 1998. And third, the 1998 removal order did not constitute a gross miscarriage of justice because it was not fundamentally flawed at the time of its execution. A threshold requirement to any due process violation claim is that there be a protected property or liberty interest. The Supreme Court has found there is no constitutionally protected interest in relief where the person awarding the relief has the unfettered discretion to grant that relief, and the process of applying for discretionary relief itself cannot be the protected interest. Because a grant of 212C relief is in the Attorney General's unfettered discretion, Ms. Felix can claim no fundamental liberty interest in applying for or receiving this relief. That issue has been kicked around through lots of cases, including at least some that I've been part of the panel, and we've carefully avoided trying to answer the question because it's a real briar patch. I've been trying to draw analogies, and the one that we hit most often is the asylum context, where ultimately the granting of asylum is something that the Attorney General has discretion to approve or withhold. And we certainly have a boatload of cases that make eligibility for asylum something that the court can review, even though that discretionary step remains to be crossed. Why isn't that the case here? I think 212C is a little bit different in that it's more akin to cancellation now, where an alien could still show the statutory requirements of being a lawful permanent resident, having the seven years unrelinquished domicile, but not show that they're deserving as a matter of discretion, usually based on certain criminal activities, or not showing rehabilitation, sort of like in the cancellation context, whether an alien has demonstrated exceptional, extremely unusual hardship. It's that unquantifiable factor that has been relegated to the Attorney General's discretion, whereas asylum, if they do meet the statutory requirements, generally discretion isn't, I mean we don't really come to a discretionary denial of asylum as frequently. See, the Attorney General really doesn't exercise the discretion to withhold asylum, which is a commendable fact, but in legal terms, it's discretion he still has. So in terms of, we talk about liberty, interest, and so forth, fundamentally, although the Justice Department hasn't exercised the power, they've still got the power. And I'm not sure that really, as a constitutional matter, changes things here. Okay. Even if there is a protected interest, the immigration judge was not obligated to inform Ms. Felix in 1998 of any eligibility for 212C relief, because she was not apparently eligible for that relief in 1998. From a human perspective, everybody understands, nobody's trying to say the I.J. screwed up. The I.J. did what the I.J. And frankly, I do believe, not everything I say during questions reflect my belief, but I think this I.J. tried hard to see if there was relief that might be available. He just didn't know what the Supreme Court was subsequently going to do in sincere. That brings me to something I've struggled with in this case, which is are courts different paths in Alvarenga and in Leon Paz? And I wonder if you could give me some help with regard to how you try to reconcile those cases. Sure. And I think that is the question, is this Leon Paz or is this Alvarenga? And I think this is Alvarenga because it takes place in the context of civil removal proceedings. Leon Paz was a criminal prosecution for illegal reentry. In criminal prosecutions relying on administrative findings, the Supreme Court in Mendoza-Lopez has said that where the administrative proceeding plays a critical role in the subsequent imposition of a criminal sanction, there must be meaningful review of the administrative proceeding. In this case, the underlying removal, 1998 removal order, is essentially an element of that 1326 illegal reentry proceeding. Therefore, there must be an opportunity for meaningful review of that order. That's not the case in a civil removal proceeding. Here, Ms. Felix could have sought review of that order first with the board in 1998, and she could have filed a petition for review of the board's denial. Many aliens were at that time after the amendments to 212C with EDPA and then finally with ERA-ERA. Aliens were appealing those decisions. She chose not to. Were they appealing those decisions on grounds that I'll call a sincere ground? I mean, that's the kind of thing the board would have. I don't know that the board could. In fact, I'm pretty confident the board couldn't say what the Supreme Court said. The board could not, but it was preserving their claims, and they were remaining in the United States, and they were continuing to fight for their ability to stay here. As soon as one year after Ms. Felix left the country in Magano-Pizano, this Court actually did suggest that the retroactivity analysis of some of the EDPA amendments were not perhaps constitutional. So it wasn't a new concept that was out there, and she could have stayed and fought. As you've recognized, she seemed to want to do anything but stay in the United States. She wanted to return to Tijuana, so she did not have to be detained, and she didn't even want to pursue a citizenship claim. Well, other than making a brief foray into Tijuana, I'm not sure she ever intended to do anything other than pass through. No, I'm not sure. That's the beauty of Tijuana. You don't have to stay. She's been making her U-turn to come right back. No, I don't want to read into what. I mean, it does appear that she was trying to get out of detention, and that was her primary goal. But when presented with the question of whether she was even a U.S. citizen and would the immigration court completely lack jurisdiction over her, she was not even interested in staying to pursue that claim. So these are just Leon Paz and Alvarongo are just very different because of the posture of the case as a criminal prosecution versus a civil removal proceeding. They're just fundamental differences in different constitutional protections that go with each. And because Alvarongo took place in the context of a civil removal proceeding, that's the path this Court should follow. And this is consistent with Supreme Court case law, finding that new interpretations of civil law apply only to those cases on direct appeal. And I would respectfully disagree with Petitioner's counsel that this case is not on direct appeal because of the waiver of appeal in 1998 and the execution of the order at that time. And so, therefore, subsequent interpretations of the 212C eligibility do not apply to this case. Moving to whether or not the 1998 removal order was a gross miscarriage of justice, the gross miscarriage of justice has been defined as when the deportation or removal order is fundamentally flawed at the time of its execution. In 1998, as we've already discussed, that was the law. Under Matters Soriano, aggravated felons were not eligible for 212C relief. That's when the immigration judge informed Ms. Felix that she had no relief available to her, as the record currently stood. That was not incorrect, and that order was not fundamentally flawed. Therefore, we would ask that the first petition for review, that's the one seeking review of the district court's denial of the habeas petition, be denied because at the time it was filed,  and in any event, that 1998 order was lawfully executed. The second petition. But what's the government's position with regard to that 1998 order? I mean, is it still in effect? Yes, it is, and it actually could. I mean, it could be reinstated at any time. The government elected to afford Ms. Felix more process than was actually due by prosecuting her in a new set of removal proceedings. Which I understand procedurally how some of these things, or in bureaucratic terms, how they come about, but it does, I sit here and say, well, it's true. It doesn't seem that the 1998 order is subject to direct review, but we've got a whole new proceeding started, and as you say, that does, it's a decision by the department to give petitioner a panoply of remedies available and so forth. It seems a little odd once you've gone down this new road to pull out the 10-year-old one and say, but we've got a trump card here because if anything happens, we've still got this order of removal, so we don't really have to win this new case. I mean, once you start a new case, doesn't that start to clear the boards? And I'm not suggesting that the government has any intention to reinstate, and actually the way they have elected to use the 1998 order is in charging inadmissibility for illegally reentering the United States after having been removed. So that's how it's been used in this case. And because of that, that is a separate ground of inadmissibility. So in the 2005 proceedings, Ms. Felix was charged as removable both for the aggravated felony or the controlled substances conviction and the inadmissibility arising from returning to the United States after having been removed. So I'm not suggesting that the government would take out the trump cards, as you've said, and put her in reinstatement. The answer to this is probably clearly in the briefs, but I haven't approached you from this side before. What's the difficulty with an assertion of eligibility for 212 waiver using SINCERE within the context of the 2005 proceeding? The problem is that she's no longer a lawful permanent resident. When she accepted the order of removal and that order was executed and she left the United States, she lost her permanent residency status. So when she returned to the United States, she returned as a person without status, not a lawful permanent resident, so therefore she does not have the seven years of permanent residency she needs for 212C. And so finally, with that third petition for review, we would ask that that be denied because she has waived any challenge to removability stemming from the controlled substances violation. The valid 1998 order also renders her inadmissible, and she is ineligible for 212C relief, as I just stated, because she is no longer a lawful permanent resident. If there's no further questions. Thank you. Thank you very much. Counsel, I'll give you a minute on rebuttal. You've got a minute and 23 seconds. Just briefly, Your Honor. With regards to the distinction between Alvarenga and Leon Paz, Alvarenga was a reinstatement case, so that different provision, the reinstatement provision, was a part of that, which says there's no review or there's no reopening. And so Alvarenga was required to somehow attempt to collaterally attack his previous order, which the court said was constitutional, and he didn't have to have a right to do that. Leon Paz, the court has used Leon Paz. It arose in a criminal case. But Leon Paz, the court has used it in other immigration cases subsequently to that. In Alvarez Barajas, there was a discussion of Leon Paz versus the court's decision in Velasco, Medina. There was also, it was cited in the Biwak case for another case which looked at the issue of was there a knowing waiver of the right to appeal. With regards to the Supreme Court's decision in St. Cyr, it's always going to be the case that some parties are going to be advantaged and disadvantaged when a Supreme Court decision is issued while the case is on direct review. And although the immigration judge couldn't be expected to prognosticate into the future, St. Cyr is the law now, and petitioners submit that it's on direct review, that there's an exception to the exhaustion requirement in her case, and therefore St. Cyr should be the law of the case, in which case she was eligible for the 212c waiver. Thank you. Thank you very much. The case is argued and submitted, and we'll take a 10-minute recess.
judges: Tallman, Clifton, N. R. Smith